Good morning, Your Honors. May it please the Court. My name is Kathleen Quinn. I represent Jean Lawler and I'm here to urge you today to vacate her sentence and remand this case for resentencing where the guideline that's applicable to the offense for which she's actually been convicted is the guideline that is applied instead of a guideline for a much more serious offense. In this case, Jean Lawler entered a plea agreement that definitely mentioned the concept of death resulting from the distribution of drugs in the drug conspiracy to which she pled. The plea agreement articulated words about that enhancement that could apply to Jean Lawler's case, but Ms. Lawler adamantly did not stipulate to that enhancement. The government agreed that she could enter her plea and the plea agreement reserving for challenge at sentencing the issue of whether or not her sentence should be enhanced for death, for the death enhancement, for death resulting from the offense. And she did contest it throughout the hearing. She contested the application of the... So she entered into the plea agreement with a reservation on that issue? Explicitly, yes. And the government entered that agreement as well. At sentencing, Judge Stattmiller was satisfied that the government could prove by a preponderance of the evidence, the lower standard of proof, that Jean Lawler was within the chain of distribution of heroin that resulted in the death, unfortunately and tragically, of Jeff Topczewski. However, at the sentencing hearing, the guideline was applied 2D11A2 for Jean Lawler having an offense of conviction of death resulting from the distribution of drugs. And the defense here, the appellant maintains that that guideline should apply only where there's actually been a conviction of the offense of distribution causing death. Ms. Lawler reserved and fought the enhancement. She did not stipulate. She did not agree. She did not acquiesce that she was in the chain of distribution that resulted in the death of Jeff Topczewski. What was the actual charge she pleaded guilty to? She pleaded guilty, Your Honor, to distribution of, conspiracy to distribute heroin, a kilogram or more. So she faced a mandatory minimum of 120 months, 10 years and up. And her guideline range without the death enhancement would have been 18. She would have been at a level 18. However, she was subject to the mandatory minimum because the greater offense resulted in the deaths of several people. But her offense of conviction was merely distribution. Well, that's what it is. It's a little bit confusing because the, you know, this, it's, there were, what, 30 defendants ultimately? I mean, originally? I believe 31. That's right. Okay. And then there were five deaths. That's right. And then I'm a little bit confused about exactly what she pleaded guilty to. I know there's a plea agreement. Yes. And I think that's where they were separating things out. And also the plea colloquy, Your Honor, with Judge Stattmiller. She was repeatedly made aware of and acknowledged that she was facing a 10 to life offense. That was the applicable penalty, unless the government prevailed down the road at sentencing on the enhancement for death resulting. But the offense that she, what this court needs to decide basically is offense, exactly the same thing as offense of conviction. And we maintain, just like the 3rd, the 5th, 6th, and the 10th circuits, it's not the same. You're saying that offense, as opposed to, I guess, offense resulting in death. Right. Offense resulting in death is narrower than the offense. Exactly. For Jean Lawler to be held accountable for that, for the offense of distribution causing death, she would have had to have either acquiesced, stipulated, acknowledged, agreed, or the government would have had to have proven beyond a reasonable doubt in some other manner that that was the offense. She did not, she explicitly did not enter a plea to that offense. Offense. Go ahead, I'm sorry, finish, and I have another question. Finish it. Offense, I acknowledge and I believe that 1B, 1A, 1 and 2 spell out that offense encapsulates the conduct plus relevant conduct. Offense of conviction is narrower and establishes only that which the defendant is actually pleading to and acknowledging, acquiescing to, stipulating to, agreeing to, saying, I am guilty to, or that the government proves beyond a reasonable doubt, which did not happen, obviously, in this case. So the government says that you're really mixing up the standard of proof for an increased mandatory minimum sentence, which is proof beyond a reasonable doubt, with the standard for a sentencing enhancement, which is proof by preponderance of the evidence, and basically saying that Redman doesn't apply because there, there was a, the government didn't allege the death-resulting enhancement. Could you speak to that? Sure. I have not seen the indictment or the information, rather, the superseding information to which Redman pled, but the case makes clear that prior to entering the plea to distribution and in the plea agreement, it was spelled out that the government would be seeking the enhancement. They'd be going for the 20-year mandatory minimum and the enhanced guideline. And she specifically, explicitly reserved her right to challenge that issue at sentencing, and that is exactly what Jane Lawler did. And so there is no case that could, could mirror more exactly Ms. Lawler's situation than Redman. The only difference is that in the original indictment, it sounds like Redman's prosecutor did not include any language about death. In Lawler's, there was wording regarding death-resulting, but explicitly carved out for purposes of the plea agreement, acknowledging that the government would be seeking that enhancement, but just like Redman, Lawler reserved for sentencing that issue. And at the same time, argued that a higher burden should apply. And in fact, after Elaine, it did apply as to the mandatory minimum. Because of the wording of the guideline, 2D11A2 and 3, and A, actually, or 1, rather, the fact that the words offense of conviction are used versus merely offense, I think makes and underscores that there has to be, before a guideline can jack up somebody's sentence so drastically, becoming, as the Jones court articulated, the tail that wags the dog, before that can happen, there has to be an agreement, an actual plea, or conviction through some other means by the defendant. And then the third, the fifth, the sixth, and the ninth agree with your position? I don't believe the ninth does. The ninth has a, what year? The tenth. The tenth. That's right. And in terms of the contrary position, just remind me of what circuit is it, the ninth that took the, was there a circuit that's taken a different position than you have? I don't know of any. I believe that the government cites Leachman, and Leachman supports Lawler completely. It articulates the ways in which Redman is exactly like Lawler, and Leachman is not. He acquiesced and agreed to the higher mandatory minimum, and the higher guideline, and the facts underlying the enhancements that applied to him, which Ms. Lawler did not do. She fought before, during, and after sentencing. Thank you. One more question. Sure. Do you know of any of the other 28, or 29, or however many there were, that were similarly treated as Lawler? My understanding, Your Honor, is that the head, Stewart, Jermaine Stewart, was given the 20-year sentence. My understanding is that in the same case on which Ms. Lawler originally challenged the application of the 20-year mandatory minimum, two other defendants at that time who were joined with her were remanded as well, and because their pleadings are sealed, and actually in preparation for today, I tried to get those unsealed. Their judgments, the minutes, and the government submissions, which were supposed to have been sealed until last March, March 2015, I tried to get those unsealed so I could answer this question. That motion was denied because it could endanger those defendants. I have no reason to believe that two of these defendants, Walker and Gladney, are still in custody, and so I, but I believe that the government would be in a better position to answer that question. I can't get at it. Thank you. Thank you. Thank you, Counsel. Ms. O'Neill. Good morning. May it please the Court. I'm Erica O'Neill, and I represent the United States. I also represented the United States on the remand of this case, although not in the previous appeal or in the case below. I will do my best to answer the Court's questions with respect to the other defendants, though, to the best of my ability. Okay. Why don't you do that now? Certainly. With respect to co-defendants O'Neill Gladley and Keith Walker, this Court heard their appeals. The Court proceeded, or the government proceeded on the direct appeal on a strict liability theory with respect to defendants Walker and Gladley, not attempting to show that they were in the direct chain of distribution. And this Court disagreed with the government's position and reversed, indicating that there was no strict liability for distribution of heroin causing death, and because the government had not even proven to a standard of preponderance of the evidence that Mr. Walker or Mr. Gladley were in that chain, that there was no liability for either of them for any of the deaths resulting from the heroin distributed in this case. Obviously, that places them in a different position than Ms. Lawler, who was found by a preponderance of the evidence, by the sentencing court, and affirmed by this Court to be in the direct chain of distribution, and that by a preponderance of the evidence, the government had proven that the heroin Ms. Lawler distributed to Jeffrey Topshefsky caused his death. And so that's part of why the government opposed the release of those documents, not only for safety reasons, but because the decision with respect to strict liability was so different from the decision here with respect to preponderance of the evidence that the death did result from Ms. Lawler's heroin distribution. So why shouldn't we join the other circuits that have essentially said that, you know, the offense of conviction establishes, like here, establishes that she conspired to possess with intent to distribute heroin, not that a death resulted from the sale of heroin, that that shouldn't apply as an enhancement? Your Honor, I believe that the decisions of the other circuits are not quite as clear. First of all, all of them came pre-Elaine. Elaine was obviously a sea change with respect to the issue of mandatory minimums and the death resulting issue, because prior to that, a defendant could be found subject to the 20-year mandatory minimum for death resulting by only a preponderance of the evidence. And that is exactly what occurred in this case. When this plea agreement was drafted in 2009, the plea agreement, if you look at paragraph 15, puts together the issue of the 20-year mandatory minimum and the offense level of 38, because again, that was the standard at the time. The government proceeded and only attempted to prove the death of Mr. Tchaikovsky by a preponderance of the evidence, because once again, that was the standard at the time. This court didn't comment on it, because the decision from this court obviously came pre-Elaine. Ms. Lawler was only saved from the 20-year mandatory minimum in this case by the court's decision in Elaine, which relieved her from the 20-year mandatory minimum because the government had not chosen to and did not prove beyond a reasonable doubt that Ms. Lawler had distributed the heroin causing death. But it is also necessary to look at the clear language of Elaine, which while making death resulting an ingredient, I guess would best be thought of as the same as an element of the offense, also stated that the ruling today does not mean that any fact that influences judicial discretion must be found by a jury. We have long recognized that broad sentencing discretion informed by judicial fact-finding does not violate the Sixth Amendment. And that is the clear language of Elaine. And while Ms. Lawler did reserve the right to challenge the death resulting issue, she also acknowledged that that death resulting would be determined by the judge. In this case, the judge determined that preponderance of the evidence, the government had met that burden of proof. No, the plea agreement allowed that? Yes. That the judge could then look at that sequence of delivery? Exactly. Paragraph 15 states, the parties further acknowledge and understand that if the sentencing court accepts the government's recommendation and finds that death or serious bodily injury resulted from the use of heroin distributed, the defendant will be then sentenced to a 20-year mandatory minimum. Again, conflating the offense level of 38 under 2D1.1A2 with a 20-year mandatory minimum, because that was the law at the time. So now the issue becomes how to read 2D1.1A2, which does, it absolutely relates to offense of conviction as opposed to simply offense, which is a substantial difference from the rest of the guidelines. However, the government submits that this is not a case where Ms. Lawler pled like a defendant Redmond did to distributing .37 grams of heroin to an estranged husband who then died from the result of mixed drug toxicity, which is exactly what happened in the Redmond case. The government submits that Redmond is one of those cases that bad facts make bad law. Here we have a defendant who was involved in a long-term conspiracy, distributed a substantial amount of heroin, used heroin herself over the years, continued to use heroin, was charged with distributing heroin, more than one kilogram, but also charged with death resulting from that distribution of the heroin. Ms. Lawler was on notice as to exactly what the government intended to prove in proving count one, and agreed to judicial fact-finding at the sentencing stage. Well, that's sort of the key, it seems, because if that's a limiting feature and it's in the plea agreement, that's what it is. I guess I saw that. I'm just looking at it from the standpoint that she's basically waiving this defense. That is the government's view, Your Honor. Even though she protested and reserved the right to object to it. So I don't, I mean, she explicitly reserved the right to challenge the application and the plea agreement, you agree the plea agreement and the plea colloquy when the plea was taken makes it clear that the minimum sentence for the offense is 10 years, which is the minimum that applied to distribution of heroin without resulting death, right? Yes, Your Honor, the minimum unless the government proved the death resulting. And that was also made clear during the plea and also during the sentencing, and it is in the plea agreement. Well, I still don't understand why we shouldn't go along with the other circuits that have said that the offense of conviction excludes relevant conduct not proven beyond a reasonable doubt. Your Honor, my reading of those cases, again, I don't believe that they are that clear. And just yesterday I checked to see if any of these cases are so clear and also decided post-Elaine to make clear that offense of conviction is read to the beyond a reasonable doubt standard, because that standard only came in 2013 with the Elaine decision. So while these other cases all decided between 2002 and I believe as recently as 2012, Greeno from the Fifth Circuit, none of them talk to the specific beyond a reasonable doubt standard. So can you explain why the term offense of conviction should be read as broadly as you would like to include relevant conduct? Because, Your Honor, this is not relevant conduct. This is that it is conduct that was charged in the indictment that the defendant pled guilty to, was found guilty of, and was sentenced to a 20-year mandatory minimum. But see, she didn't plead guilty to that provision that it had to be resulting in death. She just pled guilty to distribution of heroin. Reserving the right for that decision to be made by a judge. And in a pre-Elaine world, the judge found that the government had met its burden and sentenced her to the 20-year mandatory minimum. Yeah, but now we're in a post-Elaine world. And so shouldn't the government, I mean, I don't see why it should be read that broadly to include relevant conduct. There's been no other case by a district court or a circuit court that adopted your reasoning, right? The Greeno court found that it was not plain error to apply 2D1.1 sub A sub 2 even when the death didn't even include the death-resulting language. And I believe that there is at least one other case where the, while Greeno cites within its decision several other cases where 2D1.2 sub A sub 2 was not, did not include the death-resulting language, none of the facts were quite as clear as Greeno. But once again, Greeno in the Fifth Circuit, it wasn't even a situation where the death-resulting was alleged in the indictment. And therefore, the government believes that that analysis is better applicable to a situation such as this where there's an intervening change in the law. And the defendant here was clearly on notice that the issue was the death-resulting and she did reserve to the right of judicial fact-finding the issue of death-resulting. There are no further questions? Thank you, and I will rest on my written submission. Thank you, counsel. We'll give you a minute. I appreciate it. What's good for the goose is good for the gander. The government was on notice that Ms. Lawler was not pleading to causing death. Now, also, as far as the relevant conduct goes, Judge Stadtmiller found he used the words, I'm finding as relevant conduct the causing of the death. And so, according to the court that imposed this sentence, he viewed it as relevant conduct. Finally, at a resentencing... Which flies squarely in the face of a lake. Exactly. And then, also, I just want to note that at a resentencing, the court is, of course, the guidelines are just guidelines. They're not mandatory. They're not binding. But the court needs to calculate them correctly to begin with. And then, in this case, because the offense ended up in the tragic deaths of other people, he can look at Chapter 5 enhancements, if he wants to, as relevant conduct. But this enhancement under 2D11-A2 should not be applied because it is only applicable to offensive conviction. I'm asking this court to find that offensive conviction is much narrower than the offense, which is the conduct, plus the relevant conduct. The sentence was just a little more than eight years, wasn't it? The sentence is 98 months. That's right. And if the court were to, in the first sentencing, he imposed a 66%. In the second sentence, he imposed 58% of the recommended guidelines. And under the 5K enhancement for death, the court would be allowed to not just accept a given guideline range. He'd be able to assess the state of mind of the person, that being Jane Lawler, the likelihood that she recognized the dangerousness that she was engaging in, whether or not it was a one-time thing or a many-time thing. And I also need to correct the government. She was not involved for years and years. It was a matter of months that she was involved. She was a very low-level person. She was 40 to 60 grams was her relevant conduct. She was one of the very lowest in this entire 31-person conspiracy or 28-person conspiracy. And so I need to correct the record regarding that. And the court, of course, Judge Stettmiller, to resentencing, would be allowed to consider that. Thank you. Thank you, counsel. Case will be taken under advisement.